**PARCOIL CORPORATION,**
Plaintiff–Appellant,

v.

**NOWSCO WELL SERVICE, LTD.,**
Defendant–Appellee,

and

**Fox Drilling Company; Robert Fox, Defendants.**

No. 89–3216.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 11, 1989.

Decided Oct. 23, 1989.

William C. Cooper (Gary S. Kessler, on brief), for plaintiff-appellant.

Catherine Dabney Munster (James A. Varner, Clarksburg, W.Va., on brief), for defendant-appellee.

Before MURNAGHAN, SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

The action below was brought by Parcoil Corporation (Parcoil), the owner of oil and gas leases in West Virginia, against its drilling contractor, Fox Drilling Company (Fox), and Fox's subcontractor, NOWSCO Well Service, Ltd. (NOWSCO).[1] Parcoil alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, plus common law fraud, negligence, and breach of the implied covenants of good faith and fair dealing, all based on the actions of Fox and NOWSCO in falsifying reports concerning the type of sand used in fracturing (or "fracing") the oil and gas wells. Parcoil and Fox settled the litigation between them prior to trial. The district court granted a partial summary judgment to NOWSCO on the RICO counts, holding that they were barred because the complaint alleged only a single, limited scheme to defraud, which was insufficient to establish a *pattern* of racketeering activity as required by RICO. Pursuant to Fed.R.Civ.P. 54(b), the district court directed entry of its order as final, and Parcoil appealed. We affirm, but for reasons somewhat different from those expressed by the district court.

---

1. Parcoil's first complaint included Robert Fox as a defendant. Its amended complaint dropped Fox and Fox Drilling as defendants (because they had settled) and added numerous general and limited partners as co-plaintiffs.

The contract between Parcoil and Fox called for Fox to complete to the point of production a significant number of oil and gas wells; this process included fracing the wells. Fracing involves using hydraulic pressure to fracture the oil- or gas- bearing strata of rock, then injecting sand through the drilled well to "prop" the fissures open. This facilitates the flow of oil and gas into the well.

Initially, Parcoil left specifications as to the fracing process to the discretion of Fox (their contract being for a turnkey operation). After some sixty-five wells had been drilled, however, Parcoil became convinced that Fox was using too much finegrain sand (80/100 mesh) and not enough coarsegrain sand (20/40 mesh), resulting in the fissures being plugged rather than "propped". Parcoil therefore instructed Fox to change its fracing treatment to use a greater proportion of 20/40 sand. Fox agreed to fracture subsequent wells in accordance with Parcoil's instructions.

For four months in late 1983 and early 1984, Fox retained NOWSCO to fracture thirteen of the Parcoil wells. Fox instructed a NOWSCO representative to use the same composition of sand as had been used in the previous wells, but to write up the invoices so as to reflect the composition desired by Parcoil. The NOWSCO employees did so, sending seventeen falsified reports over a four-month period. There is no indication that either NOWSCO or Fox profited by the use of the finer-grained sand; rather, its use reflected Fox's views as to how this phase of the fracing operation properly should be conducted. Nevertheless, Parcoil claims it was injured in that the wells do not produce the quantity of oil and gas they should.

The conspiracy and actions of Fox and NOWSCO in using the finer composition of sand and falsifying the invoices to indicate use of a coarser sand formed the basis of Parcoil's suit against Fox and NOWSCO. Parcoil grounded its RICO claims on the allegations that NOWSCO's actions constituted predicate acts of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, and amounted to a conspiracy to engage and engagement in a pattern of racketeering activity, 18 U.S.C. §§ 1961 & 1962.

■ The district court, in granting the motion for partial summary judgment on the RICO claims, based its decision solely on its holding that Parcoil alleged, at best, a single, limited scheme to defraud, and that this did not satisfy the RICO requirement of a pattern. At the time of the district court's decision, the law was unsettled regarding single schemes as RICO violations. Since then, the United States Supreme Court has decided *H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), and there is now no question but that a single scheme may be sufficient to establish a pattern.

■ Nevertheless, we affirm, because we think Parcoil does not allege sufficient *continuity* to the scheme to bring it within RICO's purview. In *H.J. Inc.*, the Supreme Court made it clear that "[t]o establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." 109 S.Ct. at 2901 (emphasis in original). *H.J. Inc.* defined continuity as:

> both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept— and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be estab-

lished in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case.... A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit.... In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.

109 S.Ct. at 2902 (citations omitted).

We have considered the question of continuity previously.[2] *Brandenburg v. Seidel,* 859 F.2d 1179 (4th Cir.1988); *Walk v. Baltimore & Ohio R.R.,* 847 F.2d 1100 (4th Cir.1988), *vacated and remanded* for further consideration in light of *H.J. Inc.,* —— U.S. ——, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989); *Eastern Publishing & Advertising, Inc. v. Chesapeake Publishing & Advertising, Inc.,* 831 F.2d 488 (4th Cir.1987), *vacated and remanded* for further consideration in light of *H.J. Inc.,* —— U.S. ——, 109 S.Ct. 3234, 106 L.Ed.2d 582 (1989); *H.M.K. Corp. v. Walsey,* 828 F.2d 1071 (4th Cir. 1987); *International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149 (4th Cir.1987).

In these cases, we have deliberately declined to adopt any mechanical rules to determine the existence of a RICO pattern, holding instead that the issue is a matter of criminal dimension and degree to be decided on a case-by-case basis. Factors relevant to this inquiry include the number and variety of predicate acts and the length of time over which they were committed, the number of putative

victims, the presence of separate schemes, and the potential for multiple distinct injuries. These factors are not exclusive, and no one of them is necessarily determinative; instead, a carefully considered judgment taking into account all the facts and circumstances of the particular case—with special attention to the context in which the predicate acts occur—is required.

*Brandenburg,* 859 F.2d at 1185 (citations and quotation marks omitted).

In this case, the alleged predicate acts consisted of seventeen falsified reports sent over a period of four months. NOWSCO completed fracing the thirteen wells as per its contract with Fox, at which time the alleged scheme terminated. It takes scant analysis to discern that this is not the type of continuity contemplated by *H.J. Inc.* "Predicate acts extending over a few weeks or months and threatening no future criminal conduct" do not establish continuity. 109 S.Ct. at 2902.

Parcoil insists that, even though the scheme was conceived and executed within a short, finite time, there was a "threat" of continuation sufficient to bring it within *H.J. Inc.*'s definition of continuity. We are not persuaded. Neither in its briefs nor in oral argument could Parcoil demonstrate such a threat. The relationship of Fox and NOWSCO concluded with the fracing of the thirteen wells. They stopped their "criminal" activity independently of discovery—Parcoil did not learn of the scheme until a full year later. There was no evidence that such schemes were a part of NOWSCO's regular way of doing business; in fact, Parcoil separately hired NOWSCO

---

2. The cases followed in the wake of *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), in which the Supreme Court held that a RICO action could be maintained even if the defendant had no previous convictions for predicate acts or racketeering, so long as a pattern of racketeering activity was established. The Court emphasized that, to show a pattern, the plaintiff must demonstrate sufficient relationship and continuity among the predicate acts. Since *Sedima,* and prior to *H.J. Inc.,* other circuits, as well as ours, have struggled to define the continuity element.

The district court found that Parcoil alleged a single, *limited* scheme. Judge Kidd apparently took this language from the Fourth Circuit cases that had discussed the meaning of continuity and had found that one scheme could suffice, provided the circumstances indicated a racketeering type pattern. Judge Kidd's use of the word "limited" indicates he did not find this particular scheme sufficient. His reasoning may have been similar to ours, but his decision was made without the benefit of the *H.J. Inc.* analysis.

for a job even after the Fox–NOWSCO scheme was discovered.

We assume for purposes of deciding this issue that a conspiracy to ensure the implementation of one party's operational views over another's is a racketeering activity contemplated by the statute. Here, however, the conspiracy and all the acts carrying it into effect were by necessity completed in a period of four months. This is simply not the type of continuity described by the Supreme Court in *H.J. Inc.* In view of this, we do not reach the issue of whether Parcoil's complaint sufficiently alleged a RICO enterprise, nor do we reach the question of whether it sufficiently alleged a causal connection between the predicate acts and the alleged injuries.

The judgment of the district court is affirmed.

AFFIRMED.