959 F.2d 231
 RICO Bus.Disp.Guide 7985
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
PROFESSIONALS, INC.; Professionals I, Inc., Plaintiffs-Appellees,
and
Magno P. Roque; Arvind K. Pathak, Plaintiffs,
v.
Jagdish P. BERRY; Virendra Berry; Surendra K. Berry;
Berry Associates, Inc.; A.J. Inc., Defendants &
Third Party Plaintiffs-Appellants,
v.
Sohail AHMAD; John E. Garlitz; Akhil K. Govil; Vijay
Kumar; Baljeet S. Mahal; P.P. Mehrotra; S.L. Sandhir;
Harjit S. Sidhu; Qumar Ul Zaman; Mohammed Idress; Samuel
N. Nava; Romulo Villanueva; William P. Dale, Third Party Defendants.
 No. 91-1509.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1991.
Decided April 2, 1992.
 
 Argued: Frank W. Dunham, Jr., Cohen, Gettings & Dunham, Arlington, Va., for appellants; William Parry Dale, McChesney, Duncan & Dale, P.C., Washington, D.C., for appellees.
 On Brief: Brian P. Gettings, John E. Gagliano, Cohen, Gettings & Dunham, Arlington, Va., for appellants; Charles F. Fuller, Hanno I. Rittner, McChesney, Duncan & Dale, P.C., Washington, D.C., for appellees.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and CHAPMAN, Senior Circuit Judge.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 Professionals, Inc. and Professionals I, Inc. (collectively, "Professionals") brought suit against Jagdish P. Berry, Virendra Berry, Surendra K. Berry (collectively, "the Berrys"), Berry Associates, Inc., and A.J. Inc. (collectively, "Berry Associates") alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. §§ 1962(a)-(d), 1964(a), (c) (West 1984 & Supp.1991), and state law claims of fraud, breach of fiduciary duty, and misappropriation of corporate opportunity. The district court awarded treble damages, attorneys' fees, and costs in favor of Professionals. The Berrys and Berry Associates contend that the district court erred in finding that they operated through a pattern of racketeering activity and that the pattern proximately caused the injury sustained by Professionals. Additionally, the Berrys and Berry Associates challenge the dismissal by the district court of their counterclaim for return of capital contributions and earnings and payment of a development fee. We affirm.
 
 I.
 
 2
 The Berrys owned and operated Berry Associates, a real estate development firm in Northern Virginia. In early 1985, the Berrys began to solicit capital contributions from investors in Virginia and Maryland to finance the purchase of two parcels of land. In early 1986, the Berrys and the investors purchased two properties, Beulah Road at a cost of $820,000 and Greenbrier at a cost of $432,000, and titled them in the plaintiff corporations. After Jagdish Berry was elected president of Professionals, it contracted with Berry Associates to develop the sites in exchange for 30 percent of the profits realized from eventual sales.
 
 
 3
 Over a three-year period, the Berrys and Berry Associates diverted approximately $500,000 from Professionals through various means. These included causing Professionals to pay salaries to Berry family members, some of whom performed no services. By purchasing and reselling a Greenbrier lot on the same day, the Berrys diverted a profit of $28,600 from Professionals. They wrote checks to themselves, other family members, and Berry Associates totalling approximately $60,000 purportedly to cover services rendered for Professionals, yet they were unable to substantiate the expenditures. Without authorization, they borrowed money from Professionals and, although the loan was not repaid, directed its accountant to prepare financial reports indicating that the debt had been satisfied. False check register entries made by the Berrys, on which the accountant relied, further skewed the reports. Communicating by wire and mail, the Berrys continuously provided the shareholders with false or misleading reports of the financial condition of Professionals.
 
 
 4
 During 1986 and 1987, the Berrys opened corporate bank accounts for three construction companies that did not maintain business records or pay taxes and were not registered as required by Virginia law. These corporations presented falsified invoices in excess of $325,000 that were paid from funds of Professionals.
 
 
 5
 Alarmed by their inability to obtain complete and detailed financial information and because of other problems plaguing the development of Beulah Road, Professionals' shareholders began to question the management and operation of Berry Associates. In an effort to minimize their losses, Professionals voted to sell Beulah Road and contracted with a buyer. The Berrys attempted to block this sale by filing suit in state court. Subsequent litigation resulted in consent decrees directing the Berrys to conduct a shareholders' meeting, prohibiting the Berrys from transferring assets of Professionals, and allowing the shareholders of Professionals access to corporate documents. By the end of 1988, Professionals removed Jagdish Berry from his position as president.
 
 
 6
 Professionals then filed the instant suit alleging violations of RICO by the Berrys and Berry Associates. Professionals also brought state law claims of fraud, misappropriation of corporate opportunity, and breach of fiduciary duty. The Berrys and Berry Associates counterclaimed, averring RICO and state law violations by Professionals and their counsel. They also asserted entitlement to the 30 percent development fee for the sale of the Beulah Road property, reimbursement for capital contributions, and payment of investment returns allegedly earned on both properties.
 
 
 7
 Following a bench trial, the district court found in favor of Professionals on the RICO and pendent state claims. The court awarded $1,509,781 in treble damages on the RICO violations; these awards subsumed the damages attributable to the state law violations. The court rejected the demand of the Berrys and Berry Associates for the 30 percent development fee and for earnings on their invested funds and instead found that they were entitled to the amount they contributed to the properties, $105,000. The court subsequently awarded costs and attorneys' fees to Professionals.
 
 
 8
 Contending that their actions did not give rise to a RICO violation, the Berrys and Berry Associates appealed. This Court remanded for "more specific findings on what acts of 'racketeering activity' occurred, the length of time over which they were committed, and whether they caused plaintiffs' injuries." Professionals, Inc. v. Berry, No. 90-3005, slip op. at 7 (4th Cir. Jan. 25, 1991) (per curiam). On March 25, 1991, the district court issued additional findings. The Berrys and Berry Associates appeal from this order.[1]
 
 II.
 A.
 
 9
 The district court identified 58 predicate acts committed by the Berrys that it found constituted a pattern of racketeering activity, see 18 U.S.C.A. § 1962(c).[2] The Berrys contend that the district court concluded that a pattern existed simply on the basis of the number of predicates identified. Moreover, they argue that the acts lack sufficient continuity and relatedness to constitute a pattern. We disagree.
 
 
 10
 To prove a pattern of racketeering activity, a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). Relatedness embraces criminal acts that "have 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " Hindes v. Castle, 937 F.2d 868, 872 (3d Cir.1991) (quoting H.J. Inc., 492 U.S. at 240). Continuity "refer[s] either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. To determine whether the continuity prong has been satisfied, we evaluate " 'the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries.' " Parcoil Corp. v. NOWSCO Well Serv., Ltd., 887 F.2d 502, 504 (4th Cir.1989) (quoting Brandenburg v. Seidel, 859 F.2d 1179, 1185 (4th Cir.1988)). While we examine each of these factors, "no one [factor] is necessarily determinative"; rather, we undertake "a carefully considered judgment taking into account all the facts and circumstances of the particular case." Brandenburg, 859 F.2d at 1185.
 
 
 11
 Our review reveals that Professionals has proven the relatedness prong of the pattern requirement. The common participants, the three Berry brothers and Berry Associates, devised a plan in which they committed misconduct consisting primarily of repeated use of the mails and wires. These acts included solicitation of initial and multiple subsequent fiscal contributions, preparation and furnishing of false and misleading financial reports, and participation in shareholders' meetings during which the Berrys disseminated false and misleading reports on the progress of the sites. The Berrys intended that these acts achieve a common purpose: to obtain, use, and ultimately deplete the assets of Professionals. Each predicate act advanced the scheme as each incrementally facilitated the flow of money between the corporations and induced the shareholders to rely on the Berrys.
 
 
 12
 Likewise, sufficient continuity exists among the predicate acts to meet the second prong of the pattern requirement. The 58 acts occurred over a three-year period, victimized 16 investors, and involved three individual perpetrators acting in concert. The acts encompassed a variety of techniques to deplete corporate assets and support the Berrys' method of operating the corporation, including falsified invoices and creation of fictitious subcontractors. These activities present a sharp contrast to other instances in which we have declined to find a pattern of racketeering activity. In Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir.1989), we held that allegations failed to satisfy the continuity prong of a RICO pattern because one perpetrator undertook actions directed toward a single fraudulent goal that impacted two investors over a period of approximately one year. Likewise, in Parcoil, we declined to find a RICO pattern when 17 falsified reports were sent to a single victim over a four-month period. See Parcoil, 887 F.2d at 504.
 
 
 13
 In addition to the difference in numbers of victims, predicate acts, and duration, the scheme perpetrated by the Berrys presented a threat of ongoing criminal activity unlike the discrete schemes perpetrated in other cases. We have rejected RICO pattern claims when plaintiffs have failed to show with specificity the existence of a distinct threat of continuing racketeering activity. See Menasco, 886 F.2d at 684. In Parcoil, the defendants ceased their criminal activity independently of its discovery and the plaintiff offered no evidence that the activity constituted the defendants' "regular way of doing business." Parcoil, 887 F.2d at 504. The Berrys, however, endeavored to prolong the scheme and avoid detection by presenting a continuing flow of falsified profit reports to the shareholders, attempting to block the sale of Beulah Road, and encouraging reconciliation after state court litigation had begun by making false statements and promises. Even as litigation ensued, the Berrys violated consent orders issued by the state court. As the district court observed, had Professionals not uncovered and laboriously pursued exposure of these illegitimate practices, the Berrys likely would have persevered in their efforts to bilk Professionals of all of its earnings and investments. Because of the scope and ongoing nature of the activities, the Berrys' behavior presents the type of " 'ongoing criminal activity of sufficient scope and persistence to pose a special threat to social well-being,' " Brandenburg, 859 F.2d at 1185 (quoting Walk v. Baltimore & Ohio R.R., 847 F.2d 1100, 1106 (4th Cir.1988), vacated on other grounds, 492 U.S. 914 (1989)).
 
 B.
 
 14
 The Berrys contend that the district court erred in finding that the predicate acts permitted the Berrys to obtain the assets of the plaintiffs, retain them, and forestall the plaintiffs' investigations by false assertions and threats. They attack this finding as insufficient to support causation for a RICO violation, arguing that at best the predicate acts gave rise to only a state law violation. Moreover, they maintain that Professionals failed to prove their detrimental reliance on the predicate acts, a prerequisite to recovery under RICO.
 
 
 15
 Evaluation of the RICO causation requirement includes consideration of "such factors as the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection." Id. at 1189. The Berrys orchestrated and undertook predicate acts to deplete Professionals of its assets. They provided false information regarding the nature, stability, and productivity of the investments, paid salaries to family members that did not perform services, wrote checks to themselves even though they rendered no compensable services to Professionals, clandestinely borrowed funds and never repaid the debts, directed production of false and misleading financial reports, and created fictitious construction companies through which the Berrys processed falsified invoices. These actions lulled investors into a false sense of security, allowed the Berrys to avoid payment of dividends and returns, and permitted the Berrys to divert the investigation.
 
 
 16
 We recognized the necessity of establishing detrimental reliance to prove an injury to business or property under RICO in Morley v. Cohen, 888 F.2d 1006, 1011 (4th Cir.1989). The Berrys sought and obtained reliance on their actions by Professionals. Jagdish Berry portrayed himself, his family, and Berry Associates as experienced realestate developers who had achieved success with past projects, and he represented to Professionals that these skills would be beneficial to the development of Beulah Road and Greenbrier. Indeed, like the plaintiff in Morley, the shareholders would not have made an initial investment with the Berrys, purchased a second property, or continued their association with the Berrys if they had known of the Berrys' illegitimate practices. We conclude that the district court did not err in holding that the predicate acts caused the injury sustained by Professionals.
 
 C.
 
 17
 In their counterclaim, the Berrys alleged RICO and state law violations and sought various remedies including payment of the 30 percent development fee for the sale of the Beulah Road property. In addition to the return of their capital contributions, the Berrys also demanded that Professionals return approximately $1,500,000 allegedly invested in or earned through the development of the properties. The district court correctly dismissed the counterclaim, finding that the development fee was not owed to the Berrys and determining that the Berrys' interest in the properties was $105,000--the amount they originally invested. Raising the novel argument that dismissal of their counterclaim amounted to a grant of equitable relief to Professionals, the Berrys challenge the order of dismissal as beyond the power of the court. We find this argument to be without merit. The district court simply denied the Berrys the relief they requested.
 
 III.
 
 18
 The Berrys raise additional issues, including claims that RICO is void because it is unconstitutionally vague and that the district court erred in its computation of damages and by amending the pleadings sua sponte. We have carefully reviewed these contentions and find them to be without merit. Accordingly, the order of the district court is affirmed.
 
 
 19
 AFFIRMED.
 
 
 20
 ERVIN, Chief Judge, and CHAPMAN, Senior Circuit Judge, joined.
 
 
 
 [1]
 For ease of reference, we refer to the individual defendants and Berry Associates as "the Berrys" throughout the remainder of this opinion
 
 
 [2]
 We note that the district court did not address, nor did the parties raise on appeal, the issue of whether the "enterprise" requirement of RICO was satisfied. See 18 U.S.C.A. § 1961(4) (West 1984). Because the Berrys have not raised this issue, we assume without deciding that this requirement has been met