**HUNTINGDON LIFE SCIENCES, INC., Plaintiff,**

v.

**Michelle ROKKE, Ingrid Newkirk Marybeth Sweetland and People for the Ethical Treatment of Animals, Defendants.**

Civil No. 2:97CV597.

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 14, 1997.

See also 978 F.Supp. 662.

David Harlen Sump, Donald Charles Schultz, Crenshaw, Ware & Martin, PLC, Norfolk, VA, Stephen D. Poss, Ralph F. Boyd, Jr., Goodwin, Procter & Hoar, LLP, Boston, MA, for Plaintiff.

Philip Jay Hirschkop, Marianne Ruth Merritt, Hirschkop & Associates, Alexandria, VA, Glen Alton Huff, Huff, Poole & Mahoney, Virginia Beach, VA, Ray Webb King, Tavss, Fletcher, Earley & King, PC, Norfolk, VA, Jeffrey S. Kerr, People for the Ethical Treatment of Animals, Norfolk, VA, David B. Smith, English & Smith, Alexandria, VA, for Defendants.

### ORDER and OPINION

MORGAN, District Judge.

Defendants move this Court to dismiss all three federal claims in the Second Amended Complaint. Count One alleges a claim under 18 U.S.C. § 1962(c), Count Two alleges a claim under § 1962(a) and Count Three alleges a claim under § 1962(d). For the reasons stated below, the Court **DENIES** the motion to dismiss Counts One and Two and **GRANTS** the motion to dismiss Count Three. The Court continues to hold the motion to strike all or portions of the Second Amended Complaint **UNDER ADVISEMENT**.

### Factual History and Procedural History [1]

This lawsuit arises out of an undercover investigation by Michelle Rokke, an employee of People for the Ethical Treatment of Animals ("PETA"), in a New Jersey laboratory owned and operated by Huntingdon Life Sciences, Inc. ("Huntingdon"). PETA is a Delaware 501(c)(3) nonprofit corporation headquartered in Norfolk, Virginia; Huntingdon is a Delaware corporation with a principal place of business in New Jersey. Huntingdon alleges that Rokke sought employment at Huntingdon's animal testing facility in East Millstone, New Jersey by falsely representing (1) that she was pursuing a degree in animal sciences and (2) that she randomly sought employment after driving by the laboratory. Huntingdon hired Rokke as an Associate Technician in the Cardiovascular Unit of the Toxicology Laboratory, and she signed a Confidentiality Agreement before commencing work.

Huntingdon alleges that Rokke was an undercover PETA operative who sought employment at Huntingdon only to investigate its animal testing practices. After working at Huntingdon from September of 1996 until

---

1. The facts are stated in the light most favorable to the plaintiff, which is the non-moving party, and do not constitute findings of fact.

May of 1997, Rokke resigned, and PETA commenced a public relations campaign against Huntingdon. With the information collected from Rokke's investigation, PETA and its agents, Ingrid Newkirk, PETA's President, and Mary Beth Sweetland, PETA's Director of Research and Investigations, issued press releases, participated in interviews and released a videotape taken by Rokke in an effort to attack Huntingdon's animal testing practices. Huntingdon alleges that Rokke's employment at its facility and the subsequent dissemination of Huntingdon related information by PETA and its agents were unlawful.

Huntingdon filed a Verified Complaint and a motion for a temporary restraining order on June 16, 1997. On June 17, 1997, Judge Smith granted Huntingdon's motion and prohibited the defendants from using the information gathered at the Huntingdon laboratory. On July 7, 1997, Judge Smith found that PETA was in contempt for violating the temporary restraining order. Huntingdon filed its First Amended Verified Complaint ("First Amended Complaint") on July 17, 1997. On July 29, 1997, Judge Doumar granted Huntingdon's motion for a preliminary injunction. PETA filed a motion to dismiss and motion to strike the First Amended Complaint on August 7, 1997. The parties appeared before this Court for a hearing on the motion to dismiss on September 3, 1997. This Court granted defendants' motion to dismiss Count 21 of the First Amended Complaint, a claim based upon the Lanham Act, and took under advisement the motion to dismiss the remaining federal counts and to dismiss a number of the state law Counts. Huntingdon responded with a Second Amended Complaint and defendants have moved to dismiss all federal Counts alleged in that Complaint.[2]

## I. The Motion to Dismiss

### Standard of Review

■ In deciding a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept the facts pleaded by the plaintiff as true. The

claim should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Bruce v. Riddle,* 631 F.2d 272, 273–74 (4th Cir.1980). The court must accept the factual allegations in the complaint and must construe them in the light most favorable to the plaintiff. *Martin Marietta Corp. v. International Telecommunications Satellite Org.,* 991 F.2d 94, 97 (4th Cir.1992). The court can only rely upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery County Police Officers,* 762 F.2d 30, 31 (4th Cir. 1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986).

### A. Count One—Violation of 18 U.S.C. § 1962(c)

■ In Count One, Huntingdon alleges that the defendants violated 18 U.S.C. § 1962(c). That provision states:

> It shall be unlawful for any person employed or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To prove a violation of § 1962(c), a plaintiff must demonstrate "(1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985) (footnote omitted).

#### 1. The "Pattern of Racketeering Activity" Requirement

##### Summary of Arguments

■ In its Complaint, Huntingdon alleges that the "defendants have engaged in a long-term pattern of racketeering activity." Such activity includes involvement in laboratory infiltration at Biosearch Company in 1988,

---

2. Both parties have violated this Court's page limits as specified in Local Rule 7. This Court

will not accept future memoranda that violate Local Rule 7.

the University of Pennsylvania in 1990,[3] the Carolina Biological Supply Company in 1991, Michigan State University in 1992, the PMU ranch in 1994 and the Boys Town Research Hospital in 1996, coupled with the predicate acts of Rokke's investigation of Huntingdon's laboratory. Huntingdon argues that it sufficiently pled the predicate acts of mail and wire fraud and violations of the Hobbs and Travel Acts.

While defendants presented a number of challenges to the First Amended Verified Complaint, they challenge only the pattern requirement in their Second Motion to Dismiss. The defendants argue that Huntingdon's allegations of mail and wire fraud were not sufficiently pled with particularity and that the Travel Act and Hobbs Act violations are defective. Defendants also maintain that the allegations, taken as a whole, do not amount to a pattern of racketeering activity. The defendants point to two factually similar cases to support their view that the pattern requirement has not been met. In *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F.Supp. 811 (M.D.N.C.1995), Food Lion sued ABC over a Prime Time Live investigative article on Food Lion's handling of meat. There, the district court granted a motion to dismiss a RICO claim because the continuity element of the pattern requirement had not been met. *Id.* at 819; *see also Word of Faith Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1248, 137 L.Ed.2d 329 (1997) (pleadings insufficient to establish that ABC's Prime Time Live television show regularly conducted business through illegal acts).

Huntingdon responds that those cases are distinguishable. *Food Lion* involved a closed ended scheme lasting only six months and directed at a single victim; in addition, the allegations of prior predicate acts were not particularized. According to Huntingdon, *Word of Faith* also involved a closed end scheme with a single victim. Huntingdon argues that the predicate acts alleged against

each defendant are sufficient to establish a pattern of racketeering activity.

### *Analysis*

To establish a pattern of racketeering activity under § 1962, Huntingdon must allege that each RICO defendant committed at least two predicate acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5); *see also International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 151 (4th Cir.1987) (stating that the plaintiff must allege at least two predicate acts to bring a RICO claim). Two acts are necessary but not sufficient to establish a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Racketeering activity is defined, by statute, to include certain federal offenses including mail fraud, *see* 18 U.S.C. § 1341, wire fraud, *see* 18 U.S.C. § 1343, and transporting stolen property in interstate commerce, *see* 18 U.S.C. § 2314.[4] To establish a RICO claim under § 1962, Huntingdon must show (1) that it has suffered injury to its business or property; and (2) that this injury was caused by the defendants' predicate acts that make up the § 1962 violation. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir.1988).

"The predicate acts must be related and must amount to or pose a threat of continued criminal activity." *Palmetto State Medical Center, Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir.1997). Predicate acts are related if they "have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (*quoting* 18 U.S.C. § 3575(e)). The Supreme Court has noted:

[t]he term 'pattern' itself requires the showing of a relationship between the predicates. . . . It is this factor of continuity plus relationship which combines to pro-

---

3. PETA alleges, in its Supplemental Motion to Strike, that Huntingdon has now withdrawn predicate acts related to the Pennsylvania incident.

4. Huntingdon alleges violations of these statutes in its Complaint.

duce a pattern. *Ibid.* (emphasis added). RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.

*Id.* at 239, 109 S.Ct. at 2900. Continuity can be established in two ways: either by showing a defined series of related and repeated predicate criminal acts over a substantial period ("closed end continuity") or by showing past conduct that by its nature is open-ended and threatens future criminal activity. *See H.J., Inc.,* 492 U.S. at 241–42, 109 S.Ct. at 2901–02. The relationship prong is satisfied where the alleged predicate acts "have the same or similar purposes, results, participants, victims or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.,* 492 U.S. at 241–42, 109 S.Ct. at 2907; *see also IAC Int.'l, Inc. v. James,* 1996 WL 751454, *4 (E.D.Va. June 21, 1996) (Morgan, J.).

█ In determining whether predicate acts constitute a pattern under RICO, the United States Court of Appeals for the Fourth Circuit has stated that "we have deliberately declined to adopt any mechanical rules to determine the existence of a RICO pattern, holding instead that the issue is a matter of criminal dimension and degree to be decided on a case-by-case basis." *Parcoil Corp. v. NOWSCO Well Service, Ltd.,* 887 F.2d 502, 504 (4th Cir.1989). Instead, a court may consider a number of factors including: "the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." *Id.* Of significance to our case, the United States Supreme Court has noted that "the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as a long-term association that exists for criminal purposes ... [and] [t]he continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defen-

dant's ongoing legitimate business." *H.J. Inc.,* 492 U.S. at 243, 109 S.Ct. at 2902.

Fourth Circuit cases analyzing the pattern requirement have interpreted it narrowly. In *Parcoil Corp.,* 887 F.2d at 502, the plaintiff alleged that the defendant construction firm had falsified reports regarding sand used in drilling oil wells. Plaintiff alleged predicate acts of mail fraud and wire fraud. *Id.* at 503. The Fourth Circuit concluded that "the alleged predicate acts consisted of seventeen falsified reports sent over a period of four months.... It takes scant analysis to discern that this is not the type of continuity contemplated by *H.J. Inc.*" *Id.* at 504. In *Meadow Ltd. Partnership v. Heritage Savings and Loan Assoc.,* 639 F.Supp. 643 (E.D.Va.1986), the District Court considered whether a single land fraud deal satisfied RICO. There, the District Court found the transaction unpersuasive as to the pattern requirement, noting that "[the case] involves only a single transaction. Throughout the course of events, the cast of characters remained the same, as did the purpose, result and alleged victim." *Id.* at 650; *see also Menasco v. Wasserman,* 886 F.2d 681 (4th Cir.1989) (where no threat of continued fraudulent activity and all predicate acts occurred within a one-year span, continuity requirement was not satisfied); *United States v. Berlin,* 707 F.Supp. 832, 837–38 (E.D.Va.1989) (single scheme lasting fifteen months involving bribery and wire fraud and affecting only one victim did not constitute a pattern).

While the Fourth Circuit has taken a narrow view of the pattern requirement, the Fourth Circuit's decision in *Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.,* 18 F.3d 260 (4th Cir.1994), *cert. denied,* 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 283 (1994), a case containing similar factual predicates to those alleged by Huntingdon, persuades the Court that Huntingdon should be permitted to proceed with its claims. There, a long distance carrier charged a competitor with a RICO violation based on that carrier's fraudulent billing scheme. *Id.,* 18 F.3d at 261. The plaintiff contended that the defendant used the fraudulent scheme to attract new customers and lure them away from the

plaintiff. *Id.* The Fourth Circuit focused on the role of discovery in elaborating upon mail and wire fraud charges and emphasized that the plaintiff's claims "[were] alleged in the complaint, and the plaintiff should have an opportunity to develop support for its claims through discovery." *Id.* at 264.

All of Huntingdon's RICO claims fail if it cannot sufficiently allege a pattern of racketeering activity. Huntingdon argues that "the conduct of the defendants, and others acting in concert with them, constitutes a pattern of racketeering activity perpetuated on a regular basis over a continuous period." Complaint at ¶ 264. Huntingdon argues that it has sufficiently alleged a minimum of two related racketeering acts per defendant within a ten year period. Specifically, Huntingdon alleges predicate acts including (a) mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343; (b) extortion in violation of 18 U.S.C. § 1951; (c) travel in aid of racketeering in violation of 18 U.S.C. § 1951; (d) interstate transportation and receipt of stolen property; and (e) aiding and abetting arson in violation of 18 U.S.C. §§ 2, 844(i), 1952. These alleged prior RICO violations occurred in six separate incidents during the past ten years. The alleged prior acts include:

1. The Boys Town incident:
   a. Newkirk and Sweetland stole confidential documents from Boys Town and transported them across interstate lines in violation of 18 U.S.C. §§ 2314–15.
   b. Newkirk, Sweetland, and PETA extorted Boys Town by threat of economic harm in violation of 18 U.S.C. § 1951.

2. The PMU incident:
   a. Rokke traveled to and from North Dakota to carry out PETA's scheme and Sweetland and Newkirk assisted her in violation of 18 U.S.C. § 1952.
   b. Rokke, Sweetland and Newkirk transported stolen documents in violation of 18 U.S.C. §§ 2314–15.

3. The Michigan State incident
   a. Newkirk aided and abetted arson committed in a MSU laboratory, a predicate act under RICO.

4. The Carolina Biological Supply incident
   a. Newkirk and PETA aided and abetted travel in interstate commerce in furtherance of a scheme to extort Carolina Biological.
   b. Newkirk and PETA received stolen goods, a predicate act under RICO.
   c. Newkirk and PETA extorted Carolina Biological via the mail and wires.

5. The Biosearch incident
   a. Newkirk and PETA were guilty of mail and wire fraud.
   b. Receipt of stolen goods in violation of the RICO statute.
   c. Extortion of Biosearch via threats of economic harm.

6. The University of Pennsylvania incident
   a. PETA and Newkirk received stolen goods.
   b. Violations of 18 U.S.C. §§ 1951 and 1952 by PETA and Newkirk.

The specific RICO allegations pertaining to the eight month investigation by Rokke and the subsequent transportation of documents for use in press releases and direct mailings are predicate acts that may be considered by this Court. However, considering those predicate acts alone would probably warrant dismissal of Count One for failure to satisfy the closed end pattern continuity requirements. Instead, Huntingdon also alleges a number of other past illegal acts by the defendants, attempting to show that the defendants' scheme is an open-ended one. The Court **FINDS** that the predicate acts alleged are sufficiently detailed to survive defendants' motion to dismiss. The Court further **FINDS** that the charges sufficiently allege a long-term method of racketeering activity as specified in *H.J. Inc.* and Fourth Circuit case law.

While the defendants rely heavily upon *Food Lion* and *Word of Faith,* both of those cases are distinguishable. In *Food Lion,* the plaintiff alleged a closed-ended scheme, while Huntingdon has alleged an open-ended scheme. The plaintiff in *Word of Faith* did allege an open-ended scheme by referring to newspaper reports and filed lawsuits that elaborated upon alleged predicate acts, but the Fifth Circuit, in granting the defendants'

motion to dismiss, noted that "[p]leading the mere existence of lawsuits is not the same as pleading the facts that demonstrate predicate illegal acts as the defendant's regular way of doing business." 90 F.3d at 124. In the instant case, however, Huntingdon has gone beyond cursory allegations of lawsuits and newspaper reports and specified details of the alleged predicate acts undertaken by each individual defendant. Without the aid of discovery, Huntingdon cannot be expected to more fully develop its allegations.

### B. Count Two of the Second Amended Complaint—Violation of 18 U.S.C. § 1962(a).

■ In the Second Amended Complaint, Huntingdon alleges that PETA violated 18 U.S.C. § 1962(a).[5] In contrast to its First Amended Complaint where Huntingdon argued that PETA and other named and unnamed individuals constituted the enterprise, Huntingdon now alleges that PETA itself is the enterprise. Huntingdon alleges that "under the auspices, direction and supervision of PETA, Newkirk and Sweetland, Rokke received a salary from Huntingdon while employed there, which she turned over to PETA. Defendants deducted the amount of Rokke's Huntingdon salary from her PETA salary." Second Amended Complaint at ¶ 156. Huntingdon further alleges that "Rokke, therefore, aided and abetted by the other defendants, has invested income and, upon information and belief, the defendants have reinvested that income, as well as the proceeds of that income directly or indirectly, in the operation of the enterprise in violation of 18 U.S.C. § 1962(a)." Id. at ¶ 157.

### 1. Tracing requirement
#### Summary of Arguments

■ Defendants' primary argument is that the funds must be traced into the enterprise, and Huntingdon has failed to show how the funds can be traced. Defendants argue that Huntingdon has admitted in its Second Amended Complaint that it cannot trace the money paid by Huntingdon to defendant Rokke into the enterprise, PETA, a requirement of § 1962(a). Citing legislative history and case law from the Seventh Circuit, defendants argue that the tracing requirement was designed to prevent organized crime members from using "dirty" money to acquire controlling interests in legitimate businesses and requires this Court to directly trace the income received by Rokke from Huntingdon to PETA. Defendants allege that Huntingdon must show that the illicitly derived funds actually flowed into the enterprise, not that PETA merely "saved money" by considering the Huntingdon payment and paying her a smaller salary.

In challenging PETA's tracing argument, Huntingdon notes that there is no practical difference between Rokke handing a PETA bookkeeper $9,000 in Huntingdon salary checks and Rokke simply keeping the checks but having PETA deduct the amount of those checks from her PETA salary.

#### Analysis

Defendants base their tracing argument on the legislative history of RICO and the Seventh Circuit's decision in *Hemmings v. Barian*, 822 F.2d 688 (7th Cir.1987). There, the court considered whether a plaintiff stated a claim under § 1962(a) and the implications of the tracing theory. *Id.* at 691–92. The plaintiff in *Hemmings* owned stock in a company and agreed to sell it to the defendant in exchange for a cash down payment and five annual cash payments. *Id.* at 692. Instead of making the cash payments, defendant used the money to fund a new entity controlled by him. *Id.* The Seventh Circuit noted that there must be "investment, in another enterprise, of income derived from a pattern of racketeering activity." *Id.* The trial judge found that the Complaint failed to allege that

---

**5.** 18 U.S.C. § 1962(a) provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

the defendant invested income that he derived from fraud. *Id.* PETA cites the case as support for its argument that a "money saved" allegation does not satisfy the tracing requirement. Moreover, defendants argue that the RICO bill's chief patron, Senator McClellan, advocated a tracing requirement. *See Measures Relating to Organized Crime, 1969: Hearings Before the Subcomm. On Criminal Laws and Procedure of the Senate Judiciary Comm.*, 91st Cong., 1st Sess. 387–88 (1969).

While defendants cite legislative history and case law supporting a rigorous tracing requirement for funds invested in a RICO enterprise, Fourth Circuit jurisprudence supports Huntingdon's reasoning. In *United States v. Vogt,* 910 F.2d 1184 (4th Cir.1990), *cert. denied,* 498 U.S. 1083, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991), the Fourth Circuit noted that:

> Section 1962(a) does not exact rigorous proof of the exact course of income derived from a pattern of racketeering activity into its ultimate "use or investment." The key operative terms of the section . . . are expansive, not restrictive ones: "use or invest," "any part", "income . . . or . . . proceeds," "directly or indirectly," "establishment or operation." In combination these broad, disjunctively-phrased terms negate any requirement that the tainted income must be specifically and directly traced in proof from its original receipt to its ultimately proscribed "use or investment" by the defendant.

*Id.* at 1194.

Although *Vogt* was a criminal case, the Court **FINDS** that the Fourth Circuit's analysis of § 1962(a)'s requirements are applicable to this case. Interpreting the tracing requirement of § 1962(a) broadly, as this Court must under *Vogt,* Huntingdon has sufficiently alleged that income fraudulently ob-

tained from it by Rokke was invested in the enterprise, PETA. As the Court noted in the September 3, 1997 hearing, PETA's argument is simply based on semantics; there is no practical difference between PETA paying Rokke a full salary, with Rokke signing over her Huntingdon paycheck directly to PETA, and PETA deducting the amount that Rokke was paid by Huntingdon from the total amount that it would have paid to her.[6]

### 2. De Minimis Exception

The defendants argue that Rokke's use of her Huntingdon salary in the operation of the enterprise, PETA, would be de minimis and subject to an implied de minimis exception to § 1962(a). Huntingdon combats PETA's de minimis argument by pointing out that there is no case law support for this argument.

■ While § 1962(a) does contain a de minimis exception for illicit purchases of securities in the open market amounting in the aggregate to less than one percent of a class of stock, it contains no such de minimis exception for other violations of the statute. Congress obviously knew how to draft such an exception, but did not do so for situations such as the one before this Court. Furthermore, the issue of whether a de minimis exception, if recognized, is satisfied is a factual determination not appropriate for resolution on a motion to dismiss. Therefore, the Court **DENIES** the motion to dismiss Count Two.

### C. Count III: Conspiracy to Violate RICO
#### Summary of Arguments

■ In Count Three, Huntingdon alleges that the defendants violated 18 U.S.C. § 1962(d) by knowingly joining in a conspiracy to conduct the affairs of the criminal enterprise.[7] Specifically, Huntingdon alleges

---

6. Defendants rely on *Cashco Oil Co. v. Moses,* 605 F.Supp. 70 (N.D.Ill.1985) for the proposition that an enterprise investing in itself cannot violate § 1962(a), thereby mandating PETA's dismissal from the case. Huntingdon responds with a defense based on the investment use rule. The investment use rule provides that only those injured through the investment and use of the racketeering income enjoy a cause of action under § 1962(a). *See Busby v. Crown Supply, Inc.,*

896 F.2d 833 (4th Cir.1990). Neither of these arguments directly addresses the tracing requirement issue.

7. § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

that "Newkirk, Rokke and Sweetland, along with others known and unknown, knowingly joined in a conspiracy to participate in the conduct of the affairs of the enterprise [PETA] alleged in Paragraphs 136, 140–146 above." Huntingdon alleges that the intracorporate conspiracy doctrine does not apply to § 1962(d) claims. Even if it does apply, Huntingdon argues that Rokke is not an officer or director and therefore is not subject to the doctrine.

While defendants argued, in response to the First Amended Complaint, that Huntingdon failed to state a claim upon which relief can be granted because a corporation cannot conspire with its officers, Huntingdon has remedied that defect. Instead, the defendants now charge that individual officers and employees of a corporation cannot conspire together.

### Analysis

■ Although there are no reported Fourth Circuit cases addressing the intracorporate conspiracy doctrine in the context of a RICO claim, the Fourth Circuit has held, in other contexts, that a corporation cannot conspire with its officers or agents. *See Buschi v. Kirven,* 775 F.2d 1240 (4th Cir.1985) (examining the doctrine under 42 U.S.C. § 1983); *Marmott v. Maryland Lumber Co.,* 807 F.2d 1180 (4th Cir.1986), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 700 (1987) (addressing a claim under the Virginia conspiracy to interfere with a business statute). In addition, " 'it is the general rule that the acts of the agent are the acts of the corporation,' " thereby precluding claims against corporate employees who allegedly conspired with each other. *Buschi,* 775 F.2d 1240, 1251 (4th Cir.1985) (*quoting Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir.1952),) *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953). The doctrine is inapplicable, however, where the agent or officer has an independent personal stake in achieving the corporation's legal objective and where the acts of the officers or agents were unauthorized

by the corporate defendant. *Id.,* 775 F.2d at 1252; *United States v. EER Systems Corp.,* 950 F.Supp. 130, 132 (D.Md.1995).

In *Broussard v. Meineke Discount Muffler Shops,* 945 F.Supp. 901 (W.D.N.C.1996), the District Judge considered whether the Fourth Circuit would recognize the intracorporate conspiracy doctrine under § 1962(d). There, a group of franchisees sued a franchisor in a class action lawsuit alleging a host of claims including RICO violations under §§ 1962(c) and 1962(d). *Id.* at 908. The District Court noted that the majority of courts considering the issue had concluded that the intracorporate conspiracy doctrine barred claims alleging that the corporation had conspired with itself, but also cited recent Seventh and Ninth Circuit cases finding that the intracorporate conspiracy doctrine does not apply to § 1962(d) claims. *Id.* at 911. After examining Fourth Circuit case law, the District Court concluded that the "better rule is that, for purposes of § 1962(d), a corporation acting through its officers, even where the act is unlawful, does not constitute a 'conspiracy' for purposes of § 1962(d)." *Id.* at 912.[8]

Here, Huntingdon alleges that "Newkirk, Rokke and Sweetland, along with others known and unknown, knowingly joined in a conspiracy to participate in the conduct of the affairs of the enterprise [PETA] alleged in Paragraphs 136, 140–146 above, in violation of 18 U.S.C. § 1962(d)." Second Amended Complaint at ¶ 161. Thus, the only named conspirators are the individual defendants. In the Second Amended Complaint, Huntingdon makes no allegation that the three individual defendants have a personal stake in achieving the corporation's legal objective or that the acts of the three individual defendants were unauthorized by PETA. The Fourth Circuit's broad language in *Buschi* covering not only officers and directors but also "agents" of the corporation, would seem to encompass all three individual defendants. Given the intracorporate conspiracy rule and the likelihood that the Fourth Circuit would apply it to a RICO claim, as discussed in

---

8. The *Broussard* decision is somewhat distinguishable from the instant case because the *Broussard* Complaint alleged that the corporation conspired with employees while Huntingdon's Second Amended Complaint alleges only that the employees conspired among themselves.

*Broussard,* the Court **DISMISSES** Count Three of the Second Amended Complaint for failure to state a claim upon which relief can be granted.

### D. Defendant Rokke's Liability Under § 1962(c)

Defendants argue that Rokke is not liable under any RICO count because Huntingdon has failed to allege two or more predicate acts in which she participated. Huntingdon counters that she is liable under Count One because she (1) participated in the interstate transportation of documents stolen from Huntingdon, (2) violated the Travel Act by traveling to Ohio to promote the extortionate scheme and (3) traveled to and from North Dakota to defraud and extort a PMU ranch in a separate incident.

Under a strict reading of the "two or more predicate acts" requirement in the RICO statute, Huntingdon has sufficiently alleged predicate acts against Rokke that constitute a pattern. Therefore, the Court **FINDS** that Huntingdon has alleged three predicate acts and **DENIES** the motion to dismiss defendant Rokke.

### CONCLUSION

For the aforementioned reasons, the Court **DENIES** the motion to dismiss Counts I and II and **GRANTS** the motion to dismiss Count III of the Second Amended Complaint. The Court further **DENIES** the motion to dismiss all Counts against defendant Rokke. The Court continues to hold the motion to strike **UNDER ADVISEMENT.**

It is so **ORDERED.**